Grant RIVERS, Jr., Plaintiff-Appellant,

v.

Eli CAMPBELL, et al., Defendants-Appellees.

No. 85–3156
Non-Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

June 17, 1986.

Franklin Harrison, Sale, Brown & Smoak, Panama City, Fla., for defendants-appellees.

Before RONEY and HATCHETT, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

Appellant, Grant Rivers, Jr., brought an action against Bay County public school officials who prohibited him from selling "sno-cones" to school children on or around school grounds. Rivers alleges, among other things, that their actions deprived him of due process rights and violated anti-trust statutes. We affirm the order of the district court granting the school officials' motion for summary judgment.

**BACKGROUND**

In June, 1976, Grant Rivers, Jr., a veteran and former insurance salesman, began selling "sno-cones" in selected Panama City, Florida, neighborhoods. On or about September 15, 1976, Rivers parked his three-ton sno-cone vending truck adjacent to the grounds of Everett Junior High School. The vice principal of the school advised Rivers that he could not sell his sno-cones to the students at the school. The vice principal also directed the students not to buy River's products.

On or about September 20, 1976, the principal of Everett told Rivers that the operation of his truck near the school was prohibited, citing school board rule 4.22. The rule provides:

> 4.22 Closed campus. All schools may be operated under a closed campus policy. The principal is authorized to issue off campus passes when requested by the parent or guardian of any student. The principal may also designate any area or place 'off limits' or closed to all students during the school day, and/or up to thirty minutes before and after school.

In April or May, 1977, Rivers began selling his sno-cones on the street adjacent to Jinks Junior High School. The principal asked him to leave. Later, however, the principal simply suggested that Rivers move his truck to another adjacent street where it would not create a "safety hazard."

On May 18, 1977, Rivers appeared before the Bay County School Board seeking permission to sell his sno-cones at various county schools. His request was denied.

In November, 1981, Rivers attempted to drive his truck onto the campus of Rosenwald Junior High School and was asked to leave by the principal. According to Rivers, the principal complained that Rivers's business interfered with the school's vend-

ing and fund raising activities. The principal contends that he simply told Rivers not to drive his truck onto the campus or block the view of the school bus drivers.

In June, 1983, Rivers brought this action against the Bay County School Board, each of the school board members individually, the superintendent of the Bay County School System, a number of principals and assistant principals within the school system, and the chief of police of Springfield, Florida. Rivers's complaint initially contained eight counts. Due to the dismissal of the chief of police and several other defendants from the action, however, only six counts remained when the parties moved for summary judgment: Count I stated a claim under the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, 15; Count II stated a claim under 42 U.S.C. § 1983 for deprivation of property without due process; Count III stated a claim under 42 U.S.C. § 1983 for deprivation of the right to freedom of association; Count V stated a state antitrust claim; Count VI stated a state slander action; and Count VIII stated a claim based upon tortious interference with advantageous contracts.

The court granted the school officials' motion for summary judgment as to the counts asserting federal claims and dismissed the remaining counts based on state claims due to a lack of jurisdiction. Rivers appeals from the order granting the school officials' motion for summary judgment.

## ISSUES ON APPEAL

Rivers has been proceeding without counsel since July 30, 1984. The district court construed Rivers's motions and pleadings liberally to ensure that he was not unduly prejudiced by not having counsel. On appeal, Rivers presses, essentially, the same contentions that he pressed in district court. Therefore, we consider: (1) whether the school officials' actions deprived Rivers of liberty or property without due process such that he is entitled to relief under 42 U.S.C. § 1983; (2) whether the school officials deprived Rivers of the right to freedom of association such that he is entitled

to relief under section 1983; and (3) whether the school officials violated federal antitrust laws.

## DISCUSSION

A. Whether the school officials' actions deprived Rivers due process in violation of the fifth and fourteenth amendments such that he should be granted relief pursuant to 42 U.S.C. § 1983?

Insofar as 42 U.S.C. § 1983 affords a remedy for deprivation of federally-protected rights by a person acting under color of state law, the initial inquiry in a section 1983 action must focus on whether the essential elements of a section 1983 action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived the person of rights or privileges secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

That public school officials act under color of state law is not subject to serious debate. *See Wood v. Strickland*, 420 U.S. 308, 316–19, 95 S.Ct. 992, 998–99, 43 L.Ed.2d 214, 222–23 (1975). The main question for our consideration then is whether the school officials deprived Rivers of property or liberty without due process of law.

The district court rejected Rivers's section 1983 claim based upon a denial of due process, stating:

[U]nder the circumstances and facts of this case, the plaintiff has failed to establish that he has been deprived a federal right, whether characterized as a 'property' or 'liberty' right. The Constitution simply does not entitle the plaintiff to sell his sno-cones to everyone at any place or at any time. The facts established that the defendants have prohibited the plaintiff from selling his sno-cones on the school grounds and, for a few minutes after school is dismissed, on the streets immediately adjacent to the

school grounds. Plaintiff has failed to establish that the defendants' conduct and actions have 'deprived him of a federal right.' [Citation omitted.]

We employ a different analysis but arrive at the same conclusion. It is well settled that in determining whether property or liberty interests exist, courts should look to state law, rules, or understandings. *Board of Regents v. Roth,* 408 U.S. 564, 572, 577, 92 S.Ct. 2701, 2706, 2709, 33 L.Ed.2d 548, 558, 561 (1972).

And, this court has noted that

[u]nder Florida law, '[o]ne's business, aside from the investment of money and tangible property therein, is in every sense of the word property, and, as such, if lawful, entitled to protection from all unlawful interference.' [Citations omitted.] Hence, since one's business is property under Florida law, it cannot be injured or destroyed by the state without due process of law.

*Marrero v. City of Hialeah,* 625 F.2d 499, 514 (5th Cir.1980).

It is beyond peradventure that the school officials' actions injured Rivers's business. Once determined that a person has been deprived property or liberty interests by state action, the inquiry becomes: What process was due?

[C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interests that have been affected by governmental action.

*Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 894, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230, 1236 (1961).

The school officials contend that Rivers was accorded all the process due when he was granted a hearing before the school board. We agree. The opportunity to be heard is "the fundamental requisite of due process." *Grannis v. Ordean,* 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914).

Therefore, even if the school officials deprived Rivers of a property right, his section 1983 action is barred by *Parratt v. Taylor* because an adequate state remedy was provided to address the deprivation.

**B.** Whether the school officials actions deprived · Rivers of a constitutional right to freedom of association such that he is entitled to relief under section 1983?

The district court rejected Rivers's section 1983 claim based upon a denial of constitutionally-protected free association rights, stating:

The mere fact that the plaintiff wants to sell sno-cones to the students and cannot do so while the students are at school is simply not encompassed within the first amendment. Therefore, the plaintiff has failed to allege any deprivation of a federal right that would entitle him to claim relief under section 1983 for a deprivation of his freedom of association.

We agree.

While the first amendment protects the right to associate with others in pursuing a wide variety of social, political, educational, and economic ends, the more commercial the associational interest involved the less likely first amendment protection attaches. *See Roberts v. U.S. Jaycees,* 468 U.S. 609, ——, ——, 104 S.Ct. 3244, 3250, 3251, 82 L.Ed.2d 462, 472, 473 (1984). Rivers's seeks to associate with the Bay County area school children for commercial gain only. In our view, such "association" is not entitled to first amendment protection. Even if we were to hold that the school officials infringed upon Rivers's free association rights, he would not prevail on his claim because the state has a compelling interest in promoting the welfare of its school children. *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) ("Even a 'significant interference' with protected rights of ... association may be sustained if the state demonstrates a significantly important interest....") *Buckley* 424 U.S. at 25, 96 S.Ct. at 638, 46 L.Ed.2d at 691.

C. Whether the school officials violated federal antitrust laws?

 Rivers alleged violations of Sections 1 and 2 of the Sherman Act, codified as 15 U.S.C. §§ 1 and 2:

Section 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is hereby declared to be illegal. Every person who shall make any contract or engage in any combination of or conspiracy hereby declared to be illegal shall be deemed guilty of a felony....

Section 2. Every person who shall monopolize or attempt to monopolize, or combine or conspire with any person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a felony....

Rivers seeks damages pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15:

Any person who shall be injured in his business of property by anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee.

The district court rejected Rivers's claims for several reasons. We affirm the district court's grant of the school officials' motion for summary judgment on the most straightforward grounds cited: Rivers did not set forth facts in his deposition sufficient to defeat the school officials' motion for summary judgment. Federal Rule of Civil Procedure 56(e) provides that

when a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing

that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Rivers only asserted that school officials prevented him from selling sno-cones to school children to protect their own fund raising activities. He failed, however, to set forth any facts to support his allegations. It is well settled that mere conclusory allegations of antitrust violations will not suffice to defeat a motion for summary judgment. *Southern Concrete v. United States Steel Corporation*, 535 F.2d 313 (5th Cir.1976). The district court's granting of the school officials' motion for summary judgment on Rivers's claim of an antitrust violation is, therefore, affirmed.

CONCLUSION

For the foregoing reasons, we affirm the district court's order granting the school officials' motion for summary judgment.

**AFFIRMED.**